IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| ANGENETTE HILL, | § |
| Plaintiff, | § § § |
| v. | §   EP-10-CV-0424-KC |
| JANET NAPOLITANO, in her official capacity as Secretary of the United States Department of Homeland Security, et al., | § § § § § § |
| Defendants. | § |

**ORDER**

On this day, the Court considered Defendants Janet Napolitano and Alan Bersin's ("Defendants") Motion for Summary Judgment ("Motion"), ECF No. 36. For the reasons set forth herein, the Motion is **GRANTED**.

I.   BACKGROUND

The following facts are undisputed unless otherwise noted. Plaintiff was employed by Customs and Border Protection ("CBP") from November 4, 1991, until her resignation on November 14, 2008. Defs.' Mot. for Summ. J. App. A ("Statement of Facts") ¶ 1, ECF No. 36-1. Beginning in 2002, Plaintiff held the position of Supervisory Mission Support Specialist of Human Resources. *Id.* ¶ 2. In this role, Plaintiff's first-line supervisor was William Russell ("Russell"), the Assistant Director of Mission Support in the El Paso field office. *Id.* ¶ 4. In about September 2007, Plaintiff contacted an Equal Employment Opportunity ("EEO") counselor claiming that Russell racially harassed her when Russell made the comment that "[s]laves can't

quit their jobs, they need to be sold" during a staff meeting, and, again when she overheard him make the same comment to visitors in the office on July 30, 2007. *Id.* ¶ 5. On another occasion, on an unspecified date, Russell stated to the entire office staff that "a one-armed monkey" could do this job, and he kept a toy black monkey on his desk. Mot. Ex. 3 ("Hill Declaration"), at 8, ECF No. 36-4; Mot. Ex. 8[1] ("Pl.'s Interrogatory"), at 7, ECF No. 36-5. Plaintiff also complained that Russell simulated spitting on her head. Statement of Facts ¶ 5. As a result of that complaint, Plaintiff and Russell attended a mediation session in September 2007. *Id.* ¶ 6. Thereafter, Plaintiff did not proceed with a formal complaint. *Id.* ¶ 7.

On May 27, 2008, Ana B. Hinojosa ("DFO Hinojosa") began working for CBP in El Paso as Director of Field Operations and became Plaintiff's second-line supervisor. *Id.* ¶ 8 (citing Mot. Ex. 4 "Hinojosa Declaration").[2] Soon after, in the summer of 2008, DFO Hinojosa issued a

---

[1] Because the document is not paginated, the Court refers to the page numbers automatically assigned to the document by the Court's docketing system.

[2] Plaintiff objects to the admissibility of DFO Hinojosa's declaration. Pl.'s Resp. to Defs.' Proposed Undisputed Facts ¶ 8, ECF No. 38-1. Plaintiff argues that the declaration is inadmissible under Federal Rule of Civil Procedure 56 because it is not made on personal knowledge. *Id.* Plaintiff also argues that this evidence contravenes this Court's Standing Order Governing Motions for Summary Judgment. *Id.* Plaintiff is incorrect on both counts.

As Defendants point out, 28 U.S.C. § 1746 allows for the substitution of unsworn declarations, such as DFO Hinojosa's, for affidavits so long as the declaration is signed and sworn and contains the specific language set forth in the statute that the declarant swears under penalty of perjury that the statement is true and correct. *See* 28 U.S.C. § 1746. Indeed, Federal Rule of Civil Procedure 56(c)(4) specifically references declarations, in addition to affidavits, as the type of evidence that may be submitted on summary judgment. *See* Fed. R. Civ. P. 56©. DFO Hinojosa's declaration complies with 28 U.S.C. § 1746 and is thus admissible pursuant to the statute, the Federal Rules of Civil Procedure, and this Court's Standing Order.

Plaintiff also argues that DFO Hinojosa's declaration is not made on personal knowledge. Pl.'s Resp. to Def.'s Proposed Undisputed Facts ¶ 8. However, the declaration is replete with statements based upon DFO Hinojosa's personal knowledge. *Id.* Indeed, DFO Hinojosa is aware that her declaration must be

policy memorandum limiting the authority of managers to grant Leave Without Pay, requiring Port Directors or the Director of Field Operations to approve such leave. *Id.* ¶ 25 (citing Mot. Ex. 10). The policy states that "[e]xcept for emergencies, [Leave Without Pay] should be scheduled in advance, in writing, and be approved by the supervisor authorized to approve such a request. . . . Requests for [Leave Without Pay] must include an explanation of circumstances surrounding the request, and a medical certificate if the absence is for health reasons." *Id.* ¶ 22; Mot. Ex. 10.[3]

According to Defendants, in September 2008, an audit of Plaintiff's leave balance was prepared showing that her annual leave balance was negative 104 hours, her sick leave balance was negative 220 hours, and that the amount of Leave Without Pay that Plaintiff had taken was 260.2 hours. Statement of Fact ¶ 9.[4] In addition to this leave, Plaintiff also used 208 hours of

---

made on personal knowledge because she explains in the declaration that certain matters were not within her knowledge so she does not discuss them. Plaintiff's objections are therefore **OVERRULED**.

[3] Plaintiff also objects to the admissibility of Exhibit 10, June 30, 2008, Memorandum regarding Leave Without Pay, because she claims it is unauthenticated and contains hearsay. However, Plaintiff herself authenticated the document during her deposition and explained that she had seen the document previously. Mot. Ex. 1 ("Hill Deposition"), at 33:4-37:18. In fact, during her deposition Plaintiff actually recites from this document the same portions at issue here. *Id.* Because Plaintiff authenticated the document, the objection is **OVERRULED**. *See* Fed. R. Evid. 901(b)(1).

[4] Plaintiff objects to this evidence explaining that the evidence submitted in support of this leave balance audit does not reference September 2008, although she does not deny that it does represent "Year: 2008 Pay Period: 17." Pl.'s Resp. to Defs.' Proposed Undisputed Facts ¶ 9. In her deposition, however, Plaintiff admits that pay period eleven of 2008 was in May 2008 and that pay period twenty-three was in November 2008. Hill Depo. 38:15-38:20; 51:24-52:3. Pay period seventeen is exactly in the middle of these two pay periods, half way between May and November, which would place the date of this pay period in August or September 2008, as indicated. Further, the precise date of the audit is not important here, and Plaintiff's objection is **OVERRULED.**

annual leave and 104 hours of sick leave that she had accrued. *Id.* ¶ 10.  Overall, Plaintiff was on leave forty percent of the time during the 2008 performance rating period.  Mot. Ex. 9 ("Russell Declaration"), at 3, ECF  No. 36-5.  And, according to DFO Hinojosa, "Ms. Hill had a horrible time and attendance record.  This was so significant that Mr. Russell and I considered her to be unreliable."  Hinojosa Decl. 2.  Because of the large number of absences during 2008, over 900 hours, DFO Hinojosa encouraged Russell to pursue the leave issue with Plaintiff.  *See id.*; Statement of Facts ¶¶ 9-10.   Further, DFO Hinojosa instructed Russell that if Plaintiff fails to provide documentation to support her leave then that leave should be coded as Absent without Leave.  Hinojosa Decl. 2.  In October and November 2008, Plaintiff's attendance records were changed from "Leave Without Pay" to "Absent Without Leave" because Plaintiff failed to provide medical documentation in support of her Leave Without Pay, as required by CBP policy.  Statement of Facts ¶ 24.[5]

Plaintiff's frequent absences had a significant impact on her department and on Russell, her supervisor.  During these absences, Russell communicated directly with the employees whom

---

[5] Plaintiff objects to this fact claiming that the evidence supporting it, the Russell Declaration, is not admissible because this Court's Standing Order does not allow it, because it was not made on personal knowledge, because the statement is hearsay, and because the factual assertion is not supported by the evidence. With regard to the Standing Order and the personal knowledge arguments, the objection is unavailing for the reasons explained in footnote 2 above.  As for the claim that the assertion is not supported by the evidence, the Court disagrees. While it is true that the declaration discusses October and November 2007 instead of October and November 2008, and thus does not appear to support the statement of fact asserted, it is apparent to the Court that Russell intended to refer to 2008.  In her own deposition, Plaintiff  discusses her absences being designated as Absent Without Leave in October and November 2008, not 2007. *See* Hill Depo. 42:9–48:1.  The reference to 2007 is simply a mistake.  For these reasons, the objection is **OVERRULED**.

Plaintiff supervised. *Id.* ¶ 20.[6]  He did so because the employees approached him for guidance in Plaintiff's absence. *Id.*  Moreover, after the September 2007 EEO session, Russell arranged weekly meetings with Plaintiff. Russell Decl. 7. He did so to "go over any issues she or I might have with regards to her unit." *Id.*  Russell explained that, unlike Plaintiff, his other supervisees came to speak with him on a daily basis regarding issues and activities in their respective units so he did not have to schedule weekly meetings with them. *Id.* at 7. Separately, Russell also explained that because Plaintiff was absent forty percent of the time during the 2008 rating period, she did not receive a performance award. *Id.*; *see* Statement of Facts ¶ 30. Plaintiff resigned from her position effective November 14, 2008. Statement of Facts ¶ 11.

On November 24, 2008, Plaintiff contacted an EEO counselor, *id.* ¶ 12, and, on January 6, 2009, she filed an EEO complaint. *Id.* ¶ 13. In that complaint, Plaintiff alleges that she was discriminated against in several ways. *Id.*  The discriminatory events alleged include: from September 2007 to November 14, 2008, following an EEO session, Russell failed to communicate with Plaintiff; from September 2007 through November 14, 2008, Russell gave assignments to Plaintiff's employees without her knowledge, changed decisions she had made without notifying her, approved training and temporary duty requests for her employees without consulting her and without her knowledge, and did not inform her of meetings, changes in procedures and work assignments; from approximately September 2007 to November 2008, Russell assigned work to Plaintiff's team that belonged to other teams; from May 2008 to November 2008, Plaintiff was

---

[6] Plaintiff objects to this evidence as inadmissible under Federal Rule of Civil Procedure 56 and this Court's Standing Order. For the reasons explained in footnote 2, this objection is **OVERRULED**. Plaintiff also objects because she argues these statements are hearsay. While some of the statements contained in the affidavit are hearsay, those relied on by the government and included in this Order are not hearsay statements.

required to provide medical documentation when she used Leave without Pay; on October 10, 27, 30, and November 3, 4, 7, and 10 through 14, 2008, Plaintiff's time and attendance records were altered to reflect Absent without Approved Leave rather than Leave Without Pay; and, on or about October 27, 2008, Plaintiff learned that she would not receive a performance cash award for fiscal year 2008. *Id.* On November 22, 2010, Plaintiff filed the instant action alleging race discrimination/disparate treatment, retaliation, and constructive discharge. Pl.'s First Am. Compl. ("Amended Complaint") ¶¶ 20-25, ECF No. 11.

## II. DISCUSSION

### A. Standard

A court must enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*,

477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).  To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or show "that the materials cited by the movant do not establish the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56©.  The court resolves factual controversies in favor of the nonmoving party; however, factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or  "a 'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh evidence.  *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).  Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.

    **B.**    **Analysis**

        **1.**    **Exhaustion**

At the outset, the parties dispute whether Plaintiff can rely upon conduct that occurred more than forty-five days before the initiation of her administrative claim in support of her Title VII claims in this Court.  Defendants assert that Plaintiff contacted an EEO counselor on November 24, 2008, so that Plaintiff is barred from raising conduct in this claim that occurred

prior to October 10, 2008, forty-five days before. Mot. 4. Plaintiff argues that "'the scope of an EEOC charge should be liberally construed for litigation purposes because Title VII was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship.'" Pl.'s Resp. 2 (quoting *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008)), ECF No. 38.[7] Thus, she claims that her complaint can include conduct that "can reasonably be expected to grow out of the charge of discrimination." *Id.* (quoting *McClain*, 519 F.3d at 274). Therefore, she concludes that the conduct, which occurred prior to October 10, 2008, should be considered here because it is conduct that extended into the exhaustion period. Resp. 2-3.

"Generally, discrimination claims alleging conduct that occurred more than 45 days before the initiation of administrative action (contacting an EEO counselor) are time barred in a subsequent action in federal court." *Pacheco v. Mineta*, 448 F.3d 783, 791 n.11 (5th Cir. 2006) (citing 42 U.S.C. § 2000e-16; 29 C.F.R. § 1614.105). Still, "a Title VII lawsuit may include allegations 'like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission.'" *McClain*, 519 F.3d at 273 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)) (alterations in original).

Because it does not change the outcome of the case, the Court assumes without deciding that the alleged improper conduct which occurred more than forty-five days before Plaintiff contacted the EEO counselor is not time barred. Accordingly, the Court considers the words and actions of Russell beginning in 2007 as Plaintiff requests.

---

[7] Because the document is not paginated, the Court refers to the page numbers automatically assigned to the document by the Court's docketing system.

### 2. Title VII discrimination

In their Motion, Defendants seek summary judgment on all three of Plaintiff's claims: race discrimination, retaliation, and constructive discharge. The Court addresses each challenge in turn.

#### a. Race discrimination/disparate treatment

Defendants challenge Plaintiff's race discrimination claim, arguing it must fail because she cannot show that Defendants took an adverse employment action against her. Mot. 5-6. Further, Defendants argue that Plaintiff has not presented evidence that similarly situated employees outside of her protected class were treated more favorably. *Id.* at 6-7.

Title VII forbids an employer from discriminating against an employee because of the "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff can prove intentional discrimination with direct or circumstantial evidence. *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010). Absent direct evidence of discrimination, the court analyzes racial discrimination claims under the burden-shifting framework set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005). Under this framework, the plaintiff must first set forth a prima facie case of discrimination. *Id.* (citing *Frank v. Xerox Corp.*, 347 F.3d 130, 137 (5th Cir. 2003)). If successful, the burden shifts to the defendants to offer a legitimate, nondiscriminatory reason for their actions. *See id.* If the defendants satisfy this burden, then burden shifts back to the plaintiff to show that the legitimate, nondiscriminatory reason was a pretext for discrimination. *Id.*

#### I. Prima facie case

In order to set forth the prima facie case of race discrimination, the plaintiff must show that she was "(1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated." *Id.* "The burden of establishing a prima facie case of disparate treatment is not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). In the instant Motion, the parties dispute the third and fourth elements, that Plaintiff suffered an adverse employment action and that others similarly were treated more favorably. Mot. 5-6.

The adverse employment action of which Plaintiff complains is not any single action; instead, Plaintiff raises a litany of Russell's conduct, which, she argues, taken together amounts to an adverse employment action. *See* Resp. 3-4. This conduct includes: Russell's making the statement that "slaves cannot quit"; his placing a stuffed black monkey on his desk and telling the office staff that a one-armed monkey could do the job; his requiring Plaintiff to provide medical documentation when she took Leave Without Pay when other employees did not need to provide such documentation; his refusing to give Plaintiff a performance award for fiscal year 2008 when others received such awards; his changing attendance records from Leave Without Pay to Absent Without Approved Leave; his failing to communicate with Plaintiff; and his directly interacting with Plaintiff's supervisees. *Id.*

Although Plaintiff is generous with the recitation of the allegedly adverse actions taken by her employer, she is stingy with case law to support her contention that the cumulative effect of these actions amounts to an adverse employment action. Indeed, the Court is only able to locate one unpublished case within the Fifth Circuit that mentions this issue of aggregating actions to show adversity, and that case dismisses the contention summarily under the facts of that case. *See Mylett v. City of Corpus Christi*, 97 F. App'x 473, 475 (5th Cir. 2004). Moreover, a number of

district courts within the Southern District of New York have held that in disparate treatment claims, a plaintiff cannot rely upon the cumulative effect of multiple discriminatory acts to establish an adverse employment action. *See Bookman v. Merrill Lynch*, No. 02 Civ. 1108(RJS), 2009 WL 1360673, at *16 n.9 (S.D.N.Y. May 14, 2009); *Dauer v. Verizon Commc'ns Inc.*, No. 03 Civ. 05047(PGG), 2009 WL 186199, at *3 (S.D.N.Y. Jan. 26, 2009); *Figueroa v. N.Y.C. Health & Hosp. Corp.*, 500 F. Supp. 2d 224, 230 (S.D.N.Y. 2007); *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 356 n.22 (S.D.N.Y. 2006).

Regardless, this Court need not resolve the issue of the issue of the cumulative effect in this case because none of the complained of conduct approaches the type of actions which the Fifth Circuit has found to be adverse. Specifically, the Fifth Circuit has held that adverse employment actions include only ultimate employment decisions such as "discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007) (quoting *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000)); *see McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (citing *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)). If the action "does not affect job duties, compensation, or benefits," it is not an adverse employment action. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (quoting *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)). None of Plaintiff's claims involve any of these sorts of ultimate employment decisions, nor does their combined weight approach the gravity of these types of actions because Plaintiff's duties, compensation, and benefits were not altered. *See Alvarado*, 492 F.3d at 612; *Mylett*, 97 F. App'x at 475. Thus, Plaintiff has failed to establish the third element of the prima facie case.

Further, Plaintiff has also not established the fourth element, that others similarly situated were treated more favorably. To show this, Plaintiff must put forth some evidence that similarly situated employees outside of her protected class were treated more favorably in circumstances "nearly identical" to hers. *See Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005) (quoting *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086 1090 (5th Cir. 1995)). Plaintiff has identified Christy Daly, Angela Aleman, and Alice Torres, who were also supervisors reporting to Russell, as similarly situated to her but treated more favorably. Pl.'s Dep. 61:5-12; Pl.'s Interrog. 8. Defendants explain that these comparators were not similarly situated because, unlike Plaintiff, they were not absent from work for forty percent of the work year, missing many hundreds of hours of work. Mot. 6-7. The Court agrees that they were not similarly situated.

Defendants have presented evidence that these supervisors did not have any leave or attendance issues. Russell Decl. 3-5. Plaintiff has not come forward with any evidence to demonstrate otherwise. Instead, Plaintiff argues that the need to have the same leave balance to be similarly situated is unsupported in the case law. Resp. 5. But that is not true: the Fifth Circuit has held that "the conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001). Here, it was precisely Plaintiff's extensive absenteeism and refusal to provide documentation to support the leave without pay that is alleged to have resulted in the treatment to which she objects. Accordingly, Plaintiff has failed to establish the fourth element of her prima facie case, that others similarly situated were treated more favorably.

        **ii.**        **Legitimate, nondiscriminatory reason and pretext**

Even if Plaintiff had established a prima facie case, Defendants have come forward with a legitimate nondiscriminatory reason for the objected to conduct. *See Abarca*, 404 F.3d at 941. Defendants state that the actions of which Plaintiff complains were taken due to Plaintiff's excessive absences and failure to comply with CBP leave policy. Mot. 13. These are legitimate, nondiscriminatory reasons. *See Ajao v. Bed Bath and Beyond, Inc.*, 265 F. App'x 258, 263 (5th Cir. 2008) (citing *Crawford v. Formosa Plastics corp, La.*, 234 F.3d 899, 902 (5th Cir. 2000)) (finding that poor work performance including attendance issues to be a legitimate, nondiscriminatory reason). Therefore, the burden shifts to Plaintiff to show that the reasons were a pretext for discrimination. *See Abarca*, 404 F.3d at 94.

Plaintiff has utterly failed to offer any evidence that the Defendants' reasons for the objected to actions were pretextual. Plaintiff's only argument appears to be that Defendants did not meet their burden on summary judgment because all of their summary judgment evidence is inadmissible. But, the Court has ruled otherwise, so Plaintiff must show a fact issue of pretext which she has not done with even a scintilla of evidence. The Court has combed the record on Plaintiff's behalf and finds nothing contained there that would hint at the existence of pretext. Indeed, the evidence seems to suggest that had Plaintiff not been absent from work for so many hours, and had she followed leave policy, Russell would not done the things that upset Plaintiff: He would not have managed Plaintiff's supervisees directly; he would not have insisted on Plaintiff providing medical documentation to use Leave Without Pay pursuant to CBP policy; and, he would not have changed Plaintiff's attendance record from Leave Without Pay to Absent Without Leave. Further, it seems that Russell would have given Plaintiff a performance award as he had done in each of the previous years Plaintiff was under his supervision. *See* Hill Decl. 5. Accordingly, Defendants' Motion is granted as to the disparate treatment claim.

### b. Retaliation

Defendants next challenge Plaintiff's claim that Defendants retaliated against her for engaging in protected activity. Mot. 8. The burden shifting analysis of *McDonnell Douglas* applies to retaliation claims. *McCoy*, 492 F.3d at 556; *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). To survive summary judgment, the plaintiff must first make a prima facie showing that "(1) [she] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (quoting *Raggs v. Miss. Power & Light Co*, 278 F.3d 463, 471 (5th Cir. 2002)) (alteration in original). If the plaintiff establishes the prima facie case, the defendant must demonstrate a legitimate, nondiscriminatory reason for the employment action. *Id.* (citing *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001)). If the defendant satisfies this burden then the plaintiff must prove that the "employer's stated reason for the adverse action was merely a pretext for the real, discriminatory purpose." *Id.* The nonmovant need only present the existence of a genuine issue of material fact. *Id.*

### I. Prima facie case

The parties do not dispute that Plaintiff engaged in protected activity when she instituted an EEO complaint in September 2007. Mot. 8; Resp. 6. However, Defendants argue that Plaintiff cannot establish the second and third elements of the prima facie case, the existence of an adverse employment action, and a causal connection between Plaintiff's instituting the EEO complaint and the conduct which she argues is retaliatory. Mot. 8. Plaintiff responds that all of Russell's words and actions taken together create a question of fact whether Defendants' conduct constituted adverse actions, and that the temporal proximity between Plaintiff's engaging in the

protected activity and the adverse employment actions establishes the necessary causal connection. Resp. 5-6.

The United States Supreme Court has held that a retaliation claim may be based upon an action that "a reasonable person would have found . . . [to be] materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge or discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). "Whether a reasonable employee would view the challenged action as materially adverse involves questions of fact generally left for a jury to decide." *McArdle v. Dell Prods., L.P.*, 293 F. App'x 331, 337 (5th Cir. 2008) (citing *White*, 548 U.S. at 71-73; *Crawford v. Carroll*, 529 F.3d 961, 973 n.13 (11th Cir. 2008)). In *McArdle*, the Fifth Circuit held that a potential loss in compensation to a plaintiff could constitute an adverse employment action and found that the issue was best left for the jury. *Id.* at 337-38. Thus, in this case, Defendants' denying Plaintiff a performance award for 2008 could also constitute an adverse employment action and such determination is best left for the jury. *See Garner v. Chevron Phillips Chem. Co., L.P.*, --- F. Supp. 2d ----, 2011 WL 5967244, at *26 (S.D. Tex. 2011) (finding that under *White*, "whether the reduction in the plaintiff's bonus percentage constituted an adverse action is for the jury to decide").

With regard to the third element, the causal connection between the adverse employment action and the protected activity, Plaintiff points to her "Individual Complaint of Employment Discrimination" in support. Resp. 6. (citing Mot. Ex. 2, at 3). She argues that soon after contacting the EEO counselor in September 2007, the adverse employment actions began, which included Russell's refusing to communicate with her, his communicating directly with Plaintiff's supervisees, his overriding her decisions, and culminating a year later with the denial of her

performance award, and the changing Plaintiff's leave designation to Leave Without Pay. *See id.* (citing Mot. Ex. 2.). Close temporal proximity can show the necessary causal connection when the time lapse is less than four months. *Evan v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001); *Thomas v. Geren*, 393 F. App'x 182, 188 (5th Cir. 2010); *see also Clark Cty Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'").

      Here it is not crystal clear how much time has elapsed between Plaintiff's engaging in the protected activity in September 2007 and all of the adverse employment actions that Plaintiff has alleged. The Court has already found there to be a question of fact regarding the existence of an adverse employment action due to the denial of the performance award in October 2008. More than one year passed between Plaintiff's engaging in the September 2007 protected activity and the October 2008 denial of the performance award. This length of time is not close enough in time to establish a causal connection without more. *See Evans*, 246 F.3d at 354.

      However, Plaintiff alleges that, taken as a whole, Russell's ongoing actions and his treatment of Plaintiff over the course of that entire year following the EEO mediation, including the subsequent communication problems, Russell's direct management of Plaintiff's supervisees, and the manner in which Russell handled Plaintiff's leave issues constitute an adverse employment action and are close in time to the protected activity. Resp. 6; *see also* Mot. Ex. 2, at 3-4. Plaintiff has presented evidence that many of these actions including the communication problems with Russell, Russell's giving of assignments to Plaintiff's employees without her knowledge, Russell's changing of Plaintiff's decisions without notifying her, and Russell's

approving of training and temporary duty requests for her employees without consulting her all began soon after the EEO mediation in September 2007. Because of this close temporal proximity, Plaintiff has shown a question of fact regarding the existence of a causal connection. *See Evans*, 246 F.3d at 354.

### ii. Legitimate, nonretaliatory reason and pretext

Defendants explain that Plaintiff was treated in the manner to which she objects because they were attempting to deal with her excessive absenteeism and her failure to comply with CBP policy. Mot. 7. As explained above, this is a legitimate, nonretaliatory reason. *See Ajao*, 265 F. App'x at 263.

But, Plaintiff has not met her burden because she has not offered any evidence of pretext. Her only statement in response is that Defendants have not offered any summary judgment evidence in support of their reason for her treatment at work. Resp. 7. But, as explained above, Defendants have offered considerable admissible evidence of legitimate reasons for the way things were handled in the office, that they were attempting to deal with the fallout from an employee with very significant work absences. This may not have been to Plaintiff's liking but she has not shown that Defendants' explanation for Russell's actions was anything but legitimate. Accordingly, Defendants' Motion is granted as to the retaliation claim.

### c. Constructive discharge

Lastly, Defendants challenge Plaintiff's constructive discharge claim arguing that Plaintiff has not provided evidence showing that the conditions were sufficiently severe to cause her to quit her job. Mot. 10.

In order to prove constructive discharge, a plaintiff must show that "a reasonable party in [the plaintiff's] shoes would have felt compelled to resign." *Dediol v. Best Chevrolet, Inc.*, 655

F.3d 435, 444 (5th Cir. 2011) (quoting *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998)). In determining if a reasonable employee would feel compelled to resign, courts consider the presence of the following events: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibility; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status." *Id.* (citing *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)).

Furthermore, to constitute constructive discharge, there must be "greater severity of pervasiveness or harassment than the minimum required to prove a hostile work environment." *Id.* (quoting *Benningfield*, 157 F.3d at 378). To survive summary judgment on a claim of hostile work environment, a plaintiff must create a fact issue on each of the following elements: "(1) racially discriminatory intimidation, ridicule, and insults that are; (2) sufficiently severe or pervasive that they; (3) alter the conditions of employment; and (4) create an abusive working environment." *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000), *overruled on other grounds by White*, 548 U.S. at 53. In evaluating a hostile work environment claim, the court uses a totality-of-the-circumstances test which focuses on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

In this case, Plaintiff has not provided evidence to create a question of fact regarding the presence of a constructive discharge. First, she has not shown the presence of any of the events set out by the Fifth Circuit in *Brown* and *Dediol*. There was no demotion and no reduction in

-18-

salary.[8]  Plaintiff does not provide evidence that she was assigned menial or degrading work. With regard to the issues surrounding Plaintiff's Leave Without Pay, there is no dispute that Russell was following CBP policy, and DFO Hinojosa's direct orders, when requiring documentation for this leave.  Moreover, Plaintiff does not argue that Russell's inappropriate comments about slaves and monkeys were more than isolated incidents nor does she assert that these comments were directed only at her.  Hill Depo. 109:23-110:15.  Taken as a whole, Russell's conduct and comments were not sufficiently pervasive or severe to amount to a constructive discharge claim.  *See Dediol,* 655 F.3d at 444.

Further, the situation alleged does not even amount to a hostile work environment claim under Supreme Court precedent and, for that reason, also cannot for the basis of a constructive discharge.  *See id.*  Plaintiff acknowledged that Russell apologized for the statement about the inability of slaves to quit their jobs just after he made it.  Hill Depo. 20:9-22:14.  And, as for the Russell's placement of a toy monkey on his desk and related comment, Plaintiff was unaware of the context for the remark.  These statements and Russell's other conduct regarding Russell's communication issues, Plaintiff's leave, and the management of her supervisees, were simply not severe enough to amount to a hostile work environment.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'") (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)).

---

[8]  Although she did not receive the performance award for 2008, Plaintiff does not argue that this was a reduction in salary.  Further, the denial of a performance award even combined with less favorable work assignments, derogatory comments, and the requirement that the employee use leave time to compensate for arriving late to work do not constitute a hostile work environment.  *Ellis v. Principi*, 246 F. App'x 867, 871 (5th Cir. 2007); *Proctor v. Sw. Bell Tel. Co.*, Civil Action No. H–10–1068, 2011 WL 1770831, at *4 (S.D. Tex. May 9, 2011).

Therefore, they cannot form the basis for a constructive discharge claim. *See Dediol*, 655 F.3d at 444. Defendants' Motion is granted on this claim.

### III. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment, ECF No. 36, is **GRANTED**.

The Clerk shall close the case.

**SO ORDERED.**

**SIGNED** on this 28th day of February, 2012.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE